### ZIMMERMAN v. HUBBS.

(Supreme Court, Appellate Division, Fourth Department. March 3, 1909.)

LIFE ESTATES (§ 21*)—PERSONAL PROPERTY.

 Where a mother received money from her brother as a gift to use for her maintenance if she so desired, or if she needed it, with the understanding that, if there was any left at her death, her daughter should have it, she could pay her son the amount as consideration for his agreement to maintain her during her life, and the son, having performed his part of the agreement, the daughter could not recover any part of the gift from the son.

 [Ed. Note.—For other cases, see Life Estates, Dec. Dig. § 21.*]

 Spring and Williams, JJ., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Cora B. Zimmerman against George W. Hubbs. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles A. Phelps, for appellant.
Curtis L. Hildreth, for respondent.

McLENNAN, P. J. The parties to this action are sister and brother, and the controversy arises over the sum of $300, which their uncle, Imri Johnson, gave to their mother, his sister, Priscilla Hubbs, in December, 1891. Priscilla Hubbs is dead, and the only reliable evidence given and which was competent under section 829 of the Code in relation to the gift of the $300 to Priscilla Hubbs by her brother is his testimony. Indeed, the learned county judge states in his opinion:

 "In disposing of this case, I have entirely rejected testimony of plaintiff as to the agreements between her mother and Johnson, as I do not think this testimony was competent under section 829 of the Code, and have based my conclusion solely upon the testimony of Johnson as to such agreement."

The testimony of Johnson, so far as bearing upon the giving of the $300 to Priscilla Hubbs, his sister, is very brief, and is as follows:

"I was related to Priscilla Hubbs. I was her brother. I am acquainted with George W. Hubbs and Cora Zimmerman [the parties to this action]. I am uncle to them. While living in the town of Brownville, I did not maintain my own residence or home, but resided with my sister, Priscilla Hubbs. In a way I paid my sister, Priscilla Hubbs, for my board while I lived with her. I had no special arrangement with her. I paid the mortgage of $1,500 on the place. The place was sold by me for them for $1,800. I charged no interest on the $1,500. When I sold the place, she had the $300 above the face of the mortgage, and I gave her $300 out of the $1,500, with the understanding that, if she did not need it for her support during her lifetime, it was to go to Cora B. Zimmerman. I did not give Priscilla Hubbs any other money at any other time. At the time the gift was made there was present Priscilla Hubbs and her daughter, Cora Zimmerman [this plaintiff]. I said to Mrs. Hubbs that, if she didn't need it for her support, when she got through with it, if she had any left, she should give it to her daughter Cora. It was my intention when I gave her this money that she should use the principal sum thereof for her maintenance and support, if she so desired, or if she needed it. The gift was made for her benefit, if she needed it for her support."

On cross-examination he said:

"At the time of delivering the $300 to Priscilla Hubbs, I was not indebted to her for board or any other indebtedness. I did not deliver the $300 to Priscilla Hubbs pursuant to an oral agreement that she might have the interest on the same during her lifetime, and that the whole of the principal sum was at her death to be delivered to Cora Zimmerman. I delivered it to her for her to use—the whole of it if it was necessary for her support."

The court also finds (fourth finding):

"This farm was sold on or about December 18, 1891, for $1,800, and the money received by said Johnson, who paid the $300, excess over the amount of his mortgage, to the said Priscilla Hubbs, and also paid her $300 additional, upon the agreement and understanding that she should have the right to use it, if necessary, for her support, and that, if not used for that purpose, upon her death it should go to the plaintiff."

The meaning of Johnson's evidence cannot be in doubt, and it is not in conflict with the finding of the court in that regard. It is in effect that Priscilla Hubbs should be at liberty "to use the principal sum ($300) for her maintenance and support, if she so desired, or if she needed it." The $300 was delivered by Johnson "to her for her to use—the whole of it if it was necessary for her support." Shortly prior to the 27th day of March, 1897, and five years after she received the money from Johnson, Priscilla Hubbs gave to her son (the defendant) between $600 and $700, with which he bought a house and lot situated in the village of Dexter, and took a deed thereto in his own name with her knowledge and consent. The evidence very conclusively establishes that, when such money was paid and such deed taken, the defendant agreed with his mother in consideration of the money so given to him that he would provide a home for her and maintain and support her during her natural life, and that it was also agreed that she should be given a life lease of the house and lot so purchased by him, and that at that time or soon thereafter a lease was prepared which provided that Priscilla Hubbs, upon payment of $1 per year, should have peaceable and unmolested possession of all the rents, emoluments, and income of the said premises for her own proper use during her life, and that the defendant should pay all taxes, assessments, and repairs on said premises during her life. Such

lease, however, was not executed until October 21, 1901, about a year prior to the death of Priscilla Hubbs. It appears, however, that soon after the money was delivered to the defendant she went to live and made her home with him and continued to do so until the time of her death, which occurred in 1902. She had her room in his house. His home was regarded as her home. He paid her doctor's bills, amounting to about $16, when she was sick. She died at his home, and was buried from there, he paying the undertaker's bill, which amounted to about $103. He bought and paid $20 for a lot in the cemetery, paid $3 for digging the grave, and paid the minister $5 for conducting the funeral service. It also appears that the rent of the house and lot was paid to her when and as it became due. In other words, the evidence conclusively establishes that the defendant carried out and performed his part of the agreement and cared and made a home for, and supported, his mother during her natural life so far as was necessary, and so far as she called upon him to do so. During this period she was absent from the defendant's house a portion of the time, and was earning money as a nurse; but, so far as appears, none of the moneys so earned by her was devoted to her maintenance and support. Indeed, it appears that she had some money deposited to her own credit in the bank at the time of her death. There is not sufficient evidence in this case to support the conclusion that the $300 given to Priscilla Hubbs by her brother formed any part of the money which she gave to the defendant five years later. But, wholly independent of that question, we think that she was at liberty to use the $300 given to her by her brother in such manner as she saw fit for her support and maintenance, and that the giving of the same to her son under the agreement on his part that he should maintain and support her during her natural life was a reasonable and proper disposition of the gift so made to her; that the defendant having performed his part of the agreement in that regard the plaintiff in this action cannot question the contract so made between him and his mother or recover the sum so given to her after being turned over by her to her son in carrying out the provisions of the agreement entered into between them.

Wholly independent of the question as to whether a trust was created by the gift of Imri Johnson to his sister in favor of the plaintiff, it seems to me clear that Priscilla Hubbs had the right to use the money so given to her by Johnson for her maintenance and support, and that under the evidence it should be found that she did so use it by giving it to her son under the agreement on his part that he would maintain and support her and furnish a home for her during her natural life, and, he having performed his part of the agreement in that regard, the plaintiff has no cause of action against him.

It follows that the judgment and order appealed from should be reversed on the law and the facts, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event.

KRUSE and ROBSON, JJ., concur.

SPRING, J. (dissenting). While the proof is not explicit in showing that the $600 or $700 paid by Mrs. Hubbs to the defendant included the $300 which came from Johnson, I think the circumstances are sufficient to uphold the finding of the court below that such was the fact. The series of transactions are chiefly within the family, and it is very difficult to connect them up with direct proof. I think the effect of Johnson's testimony is that Mrs. Hubbs accepted this sum of $300 with the expectation it was to be paid to the plaintiff. It may be, as is stated in the opinion of the presiding justice, that it was primarily for her support, and that the alleged agreement with her son was fairly within the scope of the intention of Johnson when he gave her the money. It is to be borne in mind, however, that the fact of the alleged oral agreement depends entirely upon the testimony of the defendant, and his evidence is incompetent under section 829 of the Code of Civil Procedure, although no objection was interposed to it. His wife testified in his behalf, but she testified to very little to fortify his position. She simply said that Mrs. Hubbs told her "she always expected to be taken care of by him [the defendant] and expected to live with him." Inasmuch as the defendant took title by deed and gave a life lease to his mother, we would expect to find the agreement to support and maintain her as a consideration of the money paid to him embodied in this lease or in a separate written contract.

The plaintiff testified that after her mother's death she had a conversation with her brother, the defendant, with reference to this sum of $300. In testifying to his statement to her upon this subject, she gives this narration:

"He said that, when the moneys were turned over to him, his mother made him promise to divide with me, and he was bound to do it. That was what he said, and he pulled a deed out of his pocket. * * * He said he would several times."

The defendant disputes this testimony, but, in order to sustain the decision of the court below, we have a right to assume that her version is correct. It seems to me that the defendant is endeavoring to take advantage of his sister in this transaction. Their mother apparently paid her way all the time she was claiming to be living with her son. She was a strong, vigorous woman, capable of earning considerable money, and she spent much of her time with the plaintiff. She probably did call her son's residence her home, but it does seem to me that the old lady expected that this money, which came as a gift to her, would be paid over to the plaintiff. Her own money which she had earned or inherited she was willing the son should receive.

I vote for affirmance of the judgment.

WILLIAMS, J., concurs.